IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:15-CV-384-D

| | | |
|---|---|---|
| MELINDA SUE RIVERA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM &** |
| | ) | **RECOMMENDATION** |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the court on the parties' cross motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Melinda Sue Rivera ("Plaintiff") filed this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of the denial of her application for a period of disability and Disability Insurance Benefits ("DIB"). The time for filing responsive briefs has expired, and the pending motions are ripe for adjudication. Having carefully reviewed the administrative record and the motions and memoranda submitted by the parties, the undersigned recommends that Plaintiff's Motion for Judgment on the Pleadings [DE-13] be denied and Defendant's Motion for Judgment on the Pleadings [DE-15] be granted.

**STATEMENT OF THE CASE**

Plaintiff protectively filed an application for a period of disability and DIB on June 13, 2012 (Tr. 99, 113), alleging disability beginning April 30, 2010 (Tr. 158). The application was denied initially and upon reconsideration, and a request for hearing was filed. (Tr. 99, 113.) On November 5, 2013, a hearing was held before Administrative Law Judge Wanda L. Wright

("ALJ"), who issued an unfavorable ruling on February 27, 2014. (Tr. 40, 46.) On June 18, 2015, the Appeals Council denied Plaintiff's request for review. (Tr. 1.) Plaintiff now seeks judicial review of the final administrative decision pursuant to 42 U.S.C. § 405(g).

## DISCUSSION

### I. Standard of Review

The scope of judicial review of a final agency decision denying disability benefits is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; [i]t consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)) (internal quotation marks and citation omitted) (alteration in original). "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig*, 76 F.3d at 589) (internal quotation marks omitted) (first and second alterations in original). Rather, in conducting the "substantial evidence" inquiry, the court determines whether the Commissioner has considered all relevant evidence and sufficiently explained the weight accorded to the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997).

### II. Disability Determination

In making a disability determination, the Commissioner utilizes a five-step evaluation process. The Commissioner asks, sequentially, whether the claimant: (1) is engaged in substantial

gainful activity; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of an impairment listed in 20 C.F.R. Part 404, Subpart P, App. 1; (4) can perform the requirements of past work; and, if not, (5) based on the claimant's age, work experience, and residual functional capacity can adjust to other work that exists in significant numbers in the national economy. *See* 20 C.F.R. § 404.1520; *Albright v. Comm'r of Soc. Sec. Admin.*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995). At the fifth step, the burden shifts to the Commissioner to show that other work exists in the national economy that the claimant can perform. *Id*.

When assessing the severity of mental impairments, the ALJ must do so in accordance with the "special technique" described in 20 C.F.R. § 404.1520a(b)-(c). This regulatory scheme identifies four broad functional areas in which the ALJ rates the degree of functional limitation resulting from a claimant's mental impairment(s): activities of daily living; social functioning; concentration, persistence or pace; and episodes of decompensation. *Id*. § 404.1520a(c)(3). The ALJ is required to incorporate into his written decision pertinent findings and conclusions based on the "special technique." *Id*. § 404.1520a(e)(3).

## III. ALJ's Findings

Applying the five-step, sequential evaluation process, the ALJ found Plaintiff "not disabled" as defined in the Social Security Act. At step one, the ALJ found Plaintiff had not engaged in substantial gainful employment since April 30, 2010, and that she meets the insured status requirements through December 31, 2017. (Tr. 30.) Next, the ALJ determined Plaintiff had the following severe impairments: "status post cerebrovascular accident (CVA), vision impairment, arthritis, depression, and anxiety." (*Id.*) However, at step three, the ALJ concluded

3

that Plaintiff's impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 31-32.)

Prior to proceeding to step four, the ALJ assessed Plaintiff's residual functional capacity ("RFC") and found that Plaintiff had the ability to perform light work with the following limitations:

> [C]laimant would occasionally climb ramps and stairs; never climb ladders, ropes, or scaffolds; occasionally balance, stoop, kneel, crouch, or crawl; avoid concentrated exposure to moving machinery, hazardous machinery, and unprotected heights; perform simple routine repetitive tasks in a low-stress job with only occasional decision-making and occasional changes in work setting in a low production rate job with no assembly line work; occasionally interact with the general public, coworkers, and supervisors; and be limited to occupations requiring only occasional depth perception.

(Tr. 32.) In making this assessment, the ALJ found Plaintiff's statements about the severity of her symptoms not fully credible. (Tr. 35.) At step four, the ALJ concluded Plaintiff did not have the RFC to perform the requirements of her past relevant work. (Tr. 38.) Nonetheless, at step five, upon considering Plaintiff's age, education, work experience and RFC, the ALJ determined Plaintiff is capable of adjusting to the demands of other employment opportunities that exist in significant numbers in the national and state economies. (Tr. 39.)

## IV. Plaintiff's Contentions

Plaintiff challenges the Commissioner's final decision denying benefits on two grounds. Plaintiff first contends that the ALJ erred in determining Plaintiff's RFC by failing to perform a function-by-function analysis and failing to consider her other impairments. Second, Plaintiff asserts that new and material evidence demands remand.

### A. Residual Functional Capacity

First, Plaintiff contends that the ALJ failed to account for all of Plaintiff's limitations when determining Plaintiff's RFC. Specifically, Plaintiff argues that the ALJ did not adequately address the functional limitations caused by her visual impairments and associated headaches and fatigue. The RFC is an administrative assessment of "an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis" despite impairments and related symptoms. SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996); *see also* 20 C.F.R. § 416.945(a)(1). In determining the RFC, the ALJ considers an individual's ability to meet the physical, mental, sensory and other requirements of work. 20 C.F.R. § 416.945(a)(4). It is based upon all relevant evidence and may include the claimant's own description of limitations from alleged symptoms. SSR 96-8p, 1996 WL 374184, at *5; 20 C.F.R. § 416.945(a)(3). Finally, the RFC assessment "must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence." SSR 96-8p, 1996 WL 374184, at *7.

The record in this case indicates that Plaintiff has been diagnosed with Parinaud's Syndrome and has experienced fatigue and headaches, which she stated required frequent breaks during her work attempts. The ALJ determined that Plaintiff's vision impairment was severe and noted Plaintiff's up gaze Parinaud's Syndrome, double vision, and light-near pupil dissociation. (Tr. 32, 36.) However, there is no indication from Plaintiff's treating physicians how her visual impairments, or the associated symptoms of headaches and fatigue, affect her ability to work or otherwise limit her functional abilities. On July 30, 2010, the medical record indicates that Plaintiff had been prescribed prisms to help correct her double vision, that the prisms helped, and that "she ha[d] a minute amount of residual vertical double vision at far distance." (Tr. 266.) On

5

October 6, 2011, medical records indicate that Plaintiff had difficulty going down stairs due to her visual impairments and stated that Plaintiff's pupils sluggishly reacted to light, that she had a skewed deviation, and that an up gaze palsy was present. (Tr. 278-79.) On February 16, 2011, June 15, 2011, November 7, 2011, and February 15, 2012, Plaintiff was assessed with Parinaud's Syndrome. (Tr. 307-308, 310-311.) As late as August 8, 2013, the medical record indicates Plaintiff was identified as having Parinaud's Syndrome. (*See* Tr. 589, 591, 593, 595.)

The ALJ analyzed Plaintiff's visual impairments and daily activities in her decision. She accounted for all of Plaintiff's impairments by limiting her to light work performing simple, routine, repetitive tasks in a low-stress, low production-rate job with no assembly line work and requiring only occasional decision-making, occasional changes in the work setting and occasional interaction with people and further requiring only occasional climbing of stairs and ramps, no climbing of ladders, ropes, or scaffolds, only occasional balancing, stooping, kneeling, crouching or crawling, no concentrated exposure to moving machinery, hazardous machinery, or unprotected heights and only occasional depth perception. (Tr. 32.) There is no indication in the medical record that Plaintiff's limitations exceed those recognized by the ALJ. Thus, the ALJ's assessment of Plaintiff's impairments, including her visual impairment and associated symptoms of headaches and fatigue, is supported by substantial evidence.

### B.    New and Material Evidence

Plaintiff contends that new and material evidence warrants remand. Plaintiff requests that the court consider an MRI of her cervical spine from April 22, 2014. In determining whether an ALJ's decision is supported by substantial evidence, the court's review is limited to that evidence presented to the ALJ. *Smith v. Chater*, 99 F.3d 635, 638 n.5 (4th Cir. 1996) (citing *United States v. Carlo Bianchi & Co.*, 373 U.S. 709, 714-15 (1963)). Nevertheless, a court may remand a social

security case to the Commissioner pursuant to sentence six of 42 U.S.C. § 405(g) "upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g). Plaintiff has not shown that the evidence she submitted is relevant to the time period of the alleged disability date of April 30, 2010, through the date of the ALJ's decision on February 27, 2014. Consequently, this information does not constitute new and material evidence warranting remand pursuant to sentence six.

## CONCLUSION

For the reasons stated above, it is RECOMMENDED that Plaintiff's Motion for Judgment on the Pleadings [DE-13] be DENIED, Defendant's Motion for Judgment on the Pleadings [DE-15] be GRANTED and the final decision of the Commissioner be AFFIRMED.

IT IS DIRECTED that a copy of this Memorandum and Recommendation be served on each of the parties or, if represented, their counsel. Each party shall have until **June 27, 2016**, to file written objections to the Memorandum and Recommendation. The presiding district judge must conduct his or her own review (that is, make a de novo determination) of those portions of the Memorandum and Recommendation to which objection is properly made and may accept, reject, or modify the determinations in the Memorandum and Recommendation; receive further evidence; or return the matter to the magistrate judge with instructions. *See, e.g.,* 28 U.S.C. § 636(b)(l); Fed. R. Civ. P. 72(b)(3); Local Civ. R. 1.1 (permitting modification of deadlines specified in local rules), 72.4(b), E.D.N.C.

A party that does not file written objections to the Memorandum and Recommendation by the foregoing deadline, will be giving up the right to review of the Memorandum and Recommendation by the presiding district judge as described above, and the presiding district

judge may enter an order or judgment based on the Memorandum and Recommendation without such review. In addition, a party's failure to file written objections by the foregoing deadline may bar the party from appealing to the Court of Appeals from an order or judgment of the presiding district judge based on the Memorandum and Recommendation. *See Wright v. Collins*, 766 F.2d 841, 846-47 (4th Cir. 1985).

This 9th day of June 2016.

*Kimberly A. Swank*
KIMBERLY A. SWANK
United States Magistrate Judge